IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JACOB ALLEN WOOD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STEPHEN CLEAR, *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 7:20-cv-00719 <br><br> **MEMORANDUM OPINION** <br><br> By:   Hon. Thomas T. Cullen <br>         United States District Judge |

Jacob Allen Wood, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against Stephen Clear, Dr. Mark Amonette, and Dr. Joseph Cutchin, Jr. Wood claims that the defendants violated his rights under the Eighth Amendment by denying him appropriate treatment for his hepatitis C virus ("HCV"). The case is presently before the court on Clear's motion for summary judgment.[1] For the reasons set forth below, the motion will be granted.

I.   **FACTUAL BACKGROUND**

The following facts are either undisputed or presented in the light most favorable to Wood, the nonmoving party on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Defendant Clear is the Superintendent of the Southwest Virginia Regional Jail Authority ("SWVRJA" or the "Jail"). (Decl. of Stephen Clear ¶ 2, Feb. 15, 2021 [ECF No. 21-1].) The SWVRJA employs MEDIKO, a private company, to provide medical services to the

---

[1] Dr. Cutchin has also moved for summary judgment. Dr. Cutchin's motion, which has not been fully briefed, will be addressed separately.

Jail's inmates. (*Id.* ¶ 7.) Physicians and nurses employed through MEDIKO do not report to Clear or his subordinates. (*Id.* ¶¶ 6, 10.) Clear is not a medical provider, and he has no medical training beyond basic first aid and CPR. (*Id.* ¶¶ 6, 12.)

Wood was incarcerated at the Jail from August 1, 2019, through February 15, 2021.[2] (*Id.* ¶ 3.) Upon his arrival, a licensed practical nurse performed a "Receiving Screening." (Def.'s Ex. 2 at 1[3] [ECF No. 21-2].) In response to questions regarding his medical history, Wood reported that he had been diagnosed with HCV two years earlier but was not taking any medications prescribed by a physician or nurse practitioner. (*Id.* at 1– 2.)

During his first 14 months of incarceration, Wood requested medical treatment for a number of issues, including dental pain, sternum pain from a car accident, vision issues, headaches, hemorrhoids, foot pain, and rashes. (*Id.* at 14–36.) Depending on his particular complaint, Wood was placed on the "dentist list," the "sick-call list," or the "doctor list." (*Id.*)

On October 16, 2020, Wood submitted a request for HCV testing and treatment. (*Id.* at 39). He complained of fatigue and joint pain and reported that a private physician had previously advised him that he "needed hep c treatment." (*Id.*) On October 17, 2020, Wood wrote Clear a letter requesting that Clear instruct MEDIKO to treat him for HCV. (Pl.'s Ex. 2 [ECF No. 27-1 at 7].) The following day, a medical staff member placed Wood on the list to see the doctor and advised him that a doctor would need to order lab work. (Def.'s Ex. 2 at 40.)

---

[2] Wood is now incarcerated at Nottoway Correctional Center. (*See* Change of Address [ECF No. 39].)

[3] Exhibit 2 to Clear's motion for summary judgment includes numerous records from the Jail, which are bates stamped JAM001 to JAM060. Citations to the records omit the "JAM" identifier and the leading zeroes.

On October 20, 2020, Dr. Cutchin placed orders for an acute hepatitis panel and a liver profile. (*Id.* at 4, 7). The medical staff received the lab results on October 24, 2020. (*Id.* at 4.) The hepatitis panel tested positive for hepatitis C. (*Id.*) The liver profile revealed an elevated level of ALT and normal levels of albumin, bilirubin, ALK, and AST. (*Id.*) Additionally, Wood's total protein level was within normal limits. (*Id.*)

On October 30, 2020, Wood submitted a medical grievance requesting treatment for HCV. (*Id.* at 36). In response, a medical staff member informed Wood that the doctor was reviewing his request for treatment and his lab work. (*Id.*) Wood filed an appeal three days later, in which he asserted that the "standard of care" requires treatment for all patients with HCV and that he was being denied medication on the basis of cost. (*Id.* at 37.) In response, a staff member advised Wood he was on the list to speak with a doctor about his concerns. (*Id.*)

On November 4, 2020, Wood saw Dr. Cutchin and Howard Carlton, a registered nurse. (*Id.* at 6.) According to the examination notes, the medical providers explained the guidelines for hepatitis C treatment and informed Wood that he did not meet the criteria for treatment because of his normal liver function levels. (*Id.*)

On November 11, 2020, Wood filed a grievance regarding his conversation with Dr. Cutchin. (*Id.* at 43.) Wood asserted that "the standard of care is treatment for all people infected with hep c, regardless of liver scores," and that he "would like treatment." (*Id.*) In response, Wood was advised that the guidelines had been explained to him and that he does "not qualify for this treatment." (*Id.*)

On December 27, 2020, Wood wrote Clear a letter regarding the "medical staff's refusal to treat" his HCV. (*Id.* at 58.) Wood complained of being "in pain and extremely tired" and asked that Clear "instruct Mediko to treat [his] HCV." (*Id.* at 59.)

Lieutenant Jeannie Patrick responded to Wood's letter on January 7, 2021. (*Id.* at 60.) Patrick advised Wood that "[a]ll medical concerns are addressed by the medical staff" and that she does "not have the authority, or medical knowledge, to override the decisions that are made by the medical department." (*Id.*) Likewise, Clear's sworn declaration indicates that he has "no direct or indirect input as to whether an inmate is provided any particular medical treatment for HCV or otherwise"; that he does not "have the medical expertise to make medically sound decisions about complex medical issues"; and that he has not "interfered with MEDIKO's ability to treat inmates as it sees medically appropriate." (Clear Decl. ¶¶ 11, 14.)

## II. PROCEDURAL HISTORY

On November 30, 2020, Wood filed this action under 42 U.S.C. § 1983 against Clear, Dr. Cutchin, and Dr. Amonette, the Chief Physician for the Virginia Department of Corrections. On February 2, 2021, Wood filed an amended complaint against the same defendants. Wood claims that the defendants acted with deliberate indifference to a serious medical need in violation of the Eighth Amendment. (*See* Am. Compl. 1 [ECF No. 18].) In particular, Wood faults the defendants for not prescribing antiviral medications to treat his HCV. (*Id.*)

On February 17, 2021, Clear filed a motion for summary judgment. The motion has been fully briefed and is ripe for disposition.

### III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248–49).

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson*, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks and citation omitted).

### IV. ANALYSIS

"Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks and citations omitted). In order for an official to be held liable under § 1983, the plaintiff must affirmatively show that the official "acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks and citation omitted). "That is, the official's 'own

individual actions' must have 'violated the Constitution.'" *Williamson*, 912 F.3d at 171 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Wood claims that Clear and the other defendants violated his rights under the Eighth Amendment. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citing *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016)). An Eighth Amendment violation occurs when a correctional official "demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.* (citations omitted); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) ("A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.").

A claim for deliberate indifference has two components. *Jackson*, 775 F.3d at 178. "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). In this case, Clear "does not dispute that HCV, generally speaking, can be a sufficiently serious medical condition" for purposes of the subjective component. (Def.'s Br. Supp. Mot. Summ. J. 9 [ECF No. 21].) Instead, Clear argues that Wood has not put forth sufficient evidence to satisfy the subjective component of deliberate indifference. For the following reasons, the court agrees.

"An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This is an "exacting standard," which requires more than "mere negligence or even civil recklessness." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To rise to the level of an Eighth Amendment violation, "it is not enough that an official *should* have known of a risk" to an inmate's health. *Id.* Rather, the official "must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* "The subjective component therefore sets a particularly high bar to recovery." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

To the extent Wood claims that Clear was personally involved in the alleged violation of his Eighth Amendment rights, the court concludes that Clear is entitled to summary judgment. Although Wood sent Clear two letters requesting treatment for HCV, no reasonable jury could find that Clear actually knew of and disregarded a substantial risk of harm. *Jackson*, 775 F.3d at 178. Immediately after Wood sent the first letter, Wood was placed on the list to see a doctor at the Jail, and the medical staff ordered lab work. Although the lab work confirmed the presence of hepatitis C, the medical staff determined that Wood did not meet the guidelines for treatment because his liver function levels fell within normal limits. As a non-medical administrator, Clear was entitled to rely on the medical judgment of Dr. Cutchin and other MEDIKO personnel as to whether Wood required treatment, and Clear "cannot be held liable for the [physician's] diagnostic decisions" or "substitute [his] judgment for a medical professional's prescription." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002).

Moreover, no reasonable juror could find that Clear "was personally involved in the denial of treatment" for HCV. *Gordon v. Schilling*, 937 F.3d 348, 357 (4th Cir. 2019). For instance, there is no evidence that Clear "was responsible for reviewing, revising, and enforcing the [guidelines]" on which the medical staff relied to determine whether Wood qualified for or required treatment. *Id.* at 357. Instead, the undisputed evidence indicates that Clear is not a medical professional and that he has "no direct or indirect input as to whether an inmate is provided any particular medical treatment for HCV or otherwise." (Clear Decl. ¶¶ 9, 11.) Additionally, there is no evidence that Clear "interfered with or in any way limited" Wood's ability to seek medical attention for any issue, including his HCV diagnosis or symptoms. *Hinton v. Amonette*, No. 3:18-cv-00059, 2021 WL 279238, at *8 (E.D. Va. Jan. 27, 2021). Accordingly, to the extent Wood seeks to hold Clear personally liable for deliberate indifference, Clear is entitled to summary judgment. *See, e.g.*, *Allah v. Thomas*, 679 F. App'x 216, 220–21 (3d Cir. 2017) (affirming the dismissal of an Eighth Amendment claim against non-medical defendants because there were "no allegations that these prison officials were involved in any of the decisions regarding the non-treatment of [the plaintiff's] Hepatitis C"); *Edwards v. Trent*, No. 7:19-cv-00713, 2020 WL 4451061, at *3 (W.D. Va. Aug. 3, 2020) (holding that a jail administrator was entitled to summary judgment on a claim of deliberate indifference where the evidence before the court showed that the administrator had "no medical expertise"; that he was "not personally involved in determining [the plaintiff's] medical treatment"; and that the plaintiff "was seen by medical staff on multiple occasions and the doctor determined that no treatment was necessary").

Finally, to the extent Wood seeks to hold Clear liable in his supervisory capacity, Clear is entitled to summary judgment. To meet the test for supervisory liability, a plaintiff must demonstrate: (1) that the defendant "had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) that the defendant's "response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) that there was an "affirmative causal link" between the defendant's conduct and plaintiff's "particular constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Wood has not presented evidence sufficient to create a genuine issue of material fact as to any of these elements. Instead, he bases his claim on Clear's position as Superintendent and the fact that he sent Clear two letters over a two-month period, during which he was evaluated by medical personnel and underwent lab testing. The court concludes that such evidence is insufficient to meet the "heavy burden of proof" required to establish supervisory liability. *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984); *see also Johnson v. Clarke*, No. 7:20-cv-00717, 2021 WL 1536585, at *3 (W.D. Va. Apr. 19, 2021) (concluding that the plaintiff failed to state a claim for supervisory liability where the plaintiff merely stated that the defendants were "responsible by virtue of their positions and that they should have overturned the denial of his [medical] grievances"); *Millsaps v. Clark*, No. 5:13-cv-3127, 2016 WL 4257342, at *6 (E.D.N.C. Aug. 11, 2016) (holding that a non-medical prison official was entitled to rely on the judgment of medical personnel and therefore was not subject to supervisory liability merely by having personal knowledge of the plaintiff's medical complaints). Accordingly, Clear is entitled to summary judgment.

## V. CONCLUSION

For the reasons stated, the court will grant Clear's motion for summary judgment.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 28th day of September, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE